United States District Court
Southern District of Texas
**ENTERED**
October 31, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KEITH H. WASHINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-221 |
| | § | |
| BRYAN COLLIER, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CASE**

Plaintiff Keith H. Washington is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983, asserting claims under the Eighth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A. For the reasons discussed below, the Texas Department of Criminal Justice (TDCJ) is **SUBSTITUTED** in place of **TDCJ Director Lorie Davis** with respect to Plaintiff's ADA/RA claims.

For purposes of screening, the undersigned respectfully recommends that: (1) Plaintiff's request to proceed as a class action be **DENIED**; (2) Plaintiff's § 1983 and ADA/RA claims against **Senior Warden Jeffrey Richardson, Senior Warden Michael Butcher, Captain Norma Smith, Lieutenant D. Wallace, and Correctional Officer Yakeen** be **DISMISSED** without prejudice to Plaintiff filing a civil action against these

defendants in the appropriate court; (3) Plaintiff's claims for money damages against all individual Defendants, to the extent they are sued in their official capacities, be **DISMISSED with prejudice** as barred by the Eleventh Amendment (4) Plaintiff's claims against the UTMB be **DISMISSED with prejudice** as barred by the Eleventh Amendment; (5) Plaintiff's § 1983 claims against **Warden Phillip Sifuentes, Senior Medical Practice Manager Tanya Lawson, TDCJ Executive Director Bryan Collier, and Assistant Warden Daniel P. Fernandez** be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1); and (6) Plaintiff's ADA/RA claims against the **TDCJ** be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). The undersigned respectfully recommends further that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the McConnell Unit in Beeville, Texas. He was convicted of robbery in Harris County, Texas and sentenced on

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

February 8, 2008 to twenty years in prison.   He also was convicted of robbery in Galveston County, Texas and sentenced on July 19, 2010 to twenty years in prison.

On August 1, 2018, Plaintiff filed his Original Complaint, naming the following officials as defendants: (1) Bryan  Collier,  TDCJ  Executive  Director;  (2)  Phillip Sifuentes, McConnell Unit Warden; (3) Tanya Lawson, Senior Medical Practice Manager at  the  McConnell  Unit;  and  (4)  University  of  Texas  Medical  Branch  (UTMB)  in Galveston, Texas.   Plaintiff claims that Defendants acted with deliberate indifference to his  health  by  failing  to  remedy  the  extreme  heat  conditions  in  his  cell,  which  often exceeded  110°F  during  the  late  afternoon  or  early  evening.   Plaintiff  alleges  that  he alerted  each  of  the  individual  defendants  about  the  extreme  heat  conditions  and  the substantial  risk  of  harm  to  him  and  other  heat-sensitive  inmates.   In  his  Original Complaint, Plaintiff seeks injunctive relief in the form of relocating him away from the extreme heat conditions and/or repairing the malfunctioning Heating, Ventilation, and Air Conditioning (HVAC) unit in his cell block.

### A.   Original Complaint and *Spears* Hearing

A  *Spears*[2]  hearing  was  conducted  on  August  6,  2018.   The  following representations were made either at the *Spears* hearing, in Plaintiff's original complaint (D.E. 1), or in various declarations filed by Plaintiff (D.E. 7, 8, 9, 10, 52):  Plaintiff was born on July 19, 1968.  As a result of a traumatic head injury incurred at age 12, Plaintiff suffers from a chronic seizure disorder.  This seizure disorder is well documented by the

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

UTMB.   Plaintiff's seizures often occur either in extreme heat conditions or when he bangs his head.   Plaintiff currently takes medications for his seizure condition.   Due to his seizure condition, Plaintiff has a bottom bunk restriction.   Plaintiff is 6'4" tall and weighs about 240 pounds.

Plaintiff's seizures are characterized as either a petite mal seizure or the more serious grand mal seizure.   On June 24, 2018, while confined at the Darrington Unit in Rosharon, Texas, Plaintiff suffered a petite mal seizure during the early morning hours due to the hot conditions at that unit.   (D.E. 9, p. 2).   The next day, Plaintiff was transferred to the McConnell Unit where he has resided on a continual basis until the present time.   Plaintiff testified that, following his June 24, 2018 seizure, he refused a transfer a medical transfer to Galveston to see a neurologist for weakness in his left side.

Plaintiff was housed upon arrival in the administrative segregation (Ad-Seg) section of the McConnell Unit.   With regard to the overall living conditions in Ad-Seg,[3] Plaintiff testified that: (1) the cells are fairly large but that he is locked in his cell for 23 hours a day; (2) there are three levels of administrative segregation with inmates having the most privileges at Level One; (3) he was recently promoted from Level Three to Level Two, where he has more privileges.

HVAC units provide cooling air during the summer time to the cells in Ad-Seg.   Plaintiff testified that some of the prisoners' cells in Ad-Seg can become quite chilly.   However, in the particular Ad-Seg section where Plaintiff is housed, the HVAC unit has

---

[3] Plaintiff informed the Court that the prison administration is in a transition period and will eventually refer to Ad-Seg as restrictive housing.

been inoperable or malfunctioning ever since he arrived at the McConnell Unit.   In addition, the cells in Plaintiff's Ad-Seg section are predominantly sealed with the windows also sealed shut making it difficult for any air to flow into the cells.   Thus, these cells become extremely heated especially during the early evening hours.

In addition to bottom-bunk restrictions, Plaintiff currently has work and heat restrictions.   Plaintiff testified that his heat restrictions were recently restored on July 18, 2018 by Physician Assistant (PA) Susanna Corbett.[4]   Plaintiff's heat restrictions mean that, during the summer time, he must be housed in a lower-level cell which is supposed to be cooler than upper-level cells.

After complaining about the extreme heat in the second-tier cell to which he was initially assigned, Plaintiff was moved downstairs on July 24, 2018, to another cell within his Ad-Seg section.   Plaintiff states that temperatures in many of the upper-tier cells, including the one to which he was first assigned, exceed 110°F during the late afternoons. Plaintiff's temperature estimates are based on his communications with officers taking temperature readings in Plaintiff's Ad-Seg section.

Maintenance personnel are currently attempting to fix the HVAC unit, but the unit remains inoperable.   Plaintiff's testimony indicates nevertheless that the conditions of his downstairs cell are somewhat more tolerable from a heat standpoint than the upstairs cells where there is no ventilation.   Plaintiff states that air is currently blowing into his cell from the ventilation system.   However, he maintains that his cell becomes extremely

---

[4] Plaintiff testified that PA Corbett did all she could to help Plaintiff with his medical and heat issues.

uncomfortable due to the heat for two to three hours in the early evening starting at 6:00 p.m.

Plaintiff clarified that he has not suffered a seizure since arriving at the McConnell Unit.  Plaintiff referenced a heat wave around July 20, 2018, which he described as "one of the worst experiences of [his] life."  While not suffering a seizure, Plaintiff testified that he could not sleep during the heatwave and would lie on the floor to evade the suffocating heat.  Plaintiff testified, however, that he neither visited the McConnell Unit's medical department nor was hospitalized for any heat-related condition since arriving at the McConnell Unit.

During extreme heat conditions at the McConnell Unit, prison officials have failed to follow their policy and provide Plaintiff or any other inmate in his Ad-Seg section with access to air-conditioned cooled (respite) areas or cool-down showers.  According to Plaintiff, applicable TDCJ policies require prison facilities to implement the following heat mitigation measures when the temperature reaches 90°F or above: (1) provide water with ice continuously; (2) provide access to respite areas; and (3) cool down showers in addition to the showers already provided.  Plaintiff acknowledged that he has access to cold water.  He further testified that, while he has never requested to be taken to a respite area, recent circumstances have led him to believe that such a request would be futile.

Plaintiff has submitted declarations which reflect that: (1) another inmate named Benny Joe Palomo, who lives in the heat-affected prison section, takes medications making him vulnerable to extreme heat (D.E. 7, p. 4; D.E. 8); (2) several inmates in the affected prison section cite the extreme heat and the failure of prison officials to remedy

the situation (D.E. 10).  Plaintiff has alerted each of the individual defendants named in his Original Complaint about the extreme heat situation and the substantial risk of harm the extreme heat could cause him and other heat-sensitive inmates.  Plaintiff testified that he talked extensively with Warden Sifuentes about the heat issues.  Plaintiff complained to Defendant Lawson about the heat-mitigation measures in place who responded that it is not her job to enforce the measures.  According to Plaintiff, each individual defendant, however, has failed to act or otherwise remedy the situation.  Plaintiff seeks to represent a class of inmates who have been impacted in the prison section by the broken HVAC. (D.E. 7, p. 5).

On October 5, 2018, Plaintiff filed a declaration with the Court in order to provide an update as to the status of the conditions in his Ad-Seg unit.  (D.E. 52).  Plaintiff states that, on September 21, 2018, he was moved to a different cell in the unit. (D.E. 52, p. 2). Plaintiff further states that, as of September 26, 2018, his in-cell temperature is now comfortable based on "cool tempered air" lightly blowing in his cell.  (D.E.  52, p. 2). Plaintiff also reports that the HVAC Unit is now fixed and "working very well."  (D.E. 52, p. 2).

### B.  Supplemental Complaint

On August 21, 2018, the undersigned granted Plaintiff's motion to file a supplemental complaint to add claims under the ADA/RA. (D.E. 19).   Plaintiff subsequently filed his Supplemental Complaint, suing Defendants named in the original complaint as well as the following defendants in their individual and official capacities: (1) Lorie Davis, TDCJ Director; (2) Jeffrey Richardson, Senior Warden at the Ramsey I

Unit located in Rosharon, Texas; (3) Michael Butcher, Senior Warden at the Darrington Unit located in Rosharon, Texas; (4) Daniel P. Fernandez, Assistant Warden at the McConnell Unit; (5) Norma Smith, Captain of Security at the Ramsey I Unit; (6) Defendant D. Wallace, Lieutenant at the Ramsey I Unit; and (7) Mr. Yakeen, Correctional Officer at the Darrington Unit.  (D.E. 36).

Plaintiff alleges the following facts in his Supplemental Complaint:  Plaintiff arrived at the Ramsey I Unit on June 21, 2018 in the morning, where he was "in processed by Lieutenant Wallace."  (D.E. 36, p. 6).  Plaintiff informed Nurse Sandra Powell that he was a chronic seizure patient who had been prescribed Dilantin, an anti-seizure medication.  Plaintiff was assigned to a top bunk.  Lieutenant Wallace informed Plaintiff that he had to sleep on the top bunk because he had no bottom bunk pass. However, Nurse Powell communicated to Lieutenant Wallace that seizure patients cannot be housed on the top bunk.  Captain Smith suggested to Plaintiff that he sleep on the floor.

Plaintiff wrote Warden Richardson, asking for a bottom-bunk accommodation.  In response to Plaintiff's request, Plaintiff was escorted first to a pre-hearing detention area and then transferred without warning to the Darrington Unit on June 22, 2018.  Plaintiff was informed that he would be housed at the Darrington Unit's Ad-Seg unit before being transferred again to the McConnell Unit.  TDCJ transit officers told Plaintiff this was happening because he "refused programming."  (D.E. 36, p. 9).  After arriving at the Darrington Unit, Plaintiff was first "placed in a one-man standing room only steel cage"

and kept there for several hours.  (D.E. 36, p. 10).   He was then moved to an Ad-Seg holding cell.

On June 24, 2018, Plaintiff suffered a seizure during the early morning hours due to the hot conditions at that unit.  When Plaintiff awoke from his seizure, he asked for help, but none was forthcoming.  Plaintiff asserts that "all TDCJ and UTMB staff" at the Darrington Unit acted with deliberate indifference to Plaintiff's serious medical needs.

On June 25, 2018, Plaintiff was transferred to the McConnell Unit.  When he arrived at the McConnell Unit, Plaintiff was given his anti-seizure medication.  For several days, Plaintiff was not provided with any additional medical help for his seizure suffered on June 24, 2018.  On July 3, 2018, Assistant Warden Fernandez demoted Plaintiff to Level 3 security status and initially placed Plaintiff in a cell with no ventilation or cooling available.

Plaintiff alerted free-world friends and supporters who began contacting Warden Sifuentes.  Warden Sifuentes insisted that the overall ambient temperature in the Ad-Seg building was 74°F.  According to Plaintiff, during the weekend of July 21-22, 2018, Plaintiff's in-cell temperature reached 110°F at times.  On July 18, 2018, PA Corbett re-instated Plaintiff's heat restrictions, increased his dosage of Dilantin, added a new anti-seizure medication called Tegretol, and scheduled Plaintiff for a neurology appointment.  For several days, Warden Sifuentes failed to move Plaintiff to a cooler cell.  On July 24, 2018, Plaintiff was moved downstairs to another cell within his Ad-Seg section.  However, because the HVA system was inoperable, the heat issues persisted in his new cell.

Plaintiff claims that the events described in the Supplemental Complaint amount to violations of the ADA/RA as well as the Eighth Amendment.  (D.E. 36, p. 14). Plaintiff specifically cites "deliberate indifference to medical needs, unsafe conditions related to extreme heat and poor ventilation, as well as denial of Rehabilitative programming."  (D.E. 36, p. 17).  He further asserts that his chronic seizure disorder constitutes a physical impairment that limits one or more of his major life activities, such as work and other daily tasks.   In his Supplemental Complaint, Plaintiff seeks declaratory, injunctive, and monetary relief in the form of punitive damages.  (D.E.  36, p. 22).

## III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).   A claim has no arguable basis in fact if "after providing the plaintiff the

opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

## IV.   DISCUSSION

### A.   Class Action

In one of his declarations, Plaintiff seeks Court permission proceed as a class action. (D.E. 7, p. 5). Plaintiff requests permission for himself and another prisoner to be appointed as class representatives on behalf of all Texas prisoners who are susceptible to

heat extremes based on having pre-existing medical conditions or are taking psycho-tropic medications.  (D.E. 7, p. 5).

 Requests for class certification by a prisoner acting *pro se* are generally denied because the prisoner cannot "fairly and adequately protect the interests of the class."  *See* Fed. R. Civ. P. 23(a)(4) (one of the four prerequisites for class certification is a finding that the representative party can "fairly and adequately protect the interests of the class"); *Ali v. Immigration and Customs Enforcement*, No. 1:16-CV-037, 2017 WL 881102, at (N.D. Tex. Feb. 2, 2017) (denying motion to certify class filed by an immigration detainee proceeding *pro se* because he failed to show "he could fairly and adequately protect the interests of a purported class of other [immigration] detainees").  Because Plaintiff fails to show that he can properly serve as a representative party in a class action, the undersigned respectfully recommends that Plaintiff's request to proceed as a class action be denied.

## B.    Claims Arising Out of Events at the Ramsey I Unit and Darrington Unit

In his Supplemental Complaint, Plaintiff seeks to raise § 1983 and ADA/RA claims arising out of events that occurred at the Ramsey I Unit and Darrington Unit. With regard to these claims, Plaintiff seeks to sue Defendants Richardson, Butcher, Smith, Wallace, and Yakeen, who are each employed at one of these units.  Both the Ramsey I and Darrington Units are located in Rosharon, Texas, which is outside the Corpus Christi Division and within the Galveston Division of the Southern District of Texas.

Because the Galveston Division of this Court is the appropriate venue for Plaintiff's claims arising out of events occurring at the Ramsey I Unit and Darrington Unit, the undersigned recommends that Plaintiff's ADA/RA and § 1983 claims against Defendants Richardson, Butcher, Smith, Wallace, and Yakeen be dismissed without prejudice to Plaintiff filing a civil action against these defendants in the appropriate Division.

### C.   Section 1983 Claims

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### *(1)   Eleventh Amendment Immunity and Official Capacity Claims*

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity

is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

Plaintiff does not indicate in his Original Complaint whether he sues the individual defendants named therein in their official capacities. He further stated at the *Spears* hearing that he seeks only injunctive relief against those defendants. In his Supplemental Complaint, however, Plaintiff appears to seek punitive damages against all individual defendants named in the Original and Supplemental Complaints. He further seeks to sue all individual defendants in their official capacities. To the extent that Plaintiff sues any individual defendant in his or her official capacity for monetary damages in connection with any § 1983 claim, those claims are barred by the Eleventh Amendment. It is respectfully recommended, therefore, that Plaintiff's § 1983 claims for money damages against any individual defendant in his or her official capacity be dismissed with prejudice as barred by the Eleventh Amendment.

In his original complaint, Plaintiff also seeks injunctive relief against the UTMB. The Eleventh Amendment bars suit against state entities such as the UTMB regardless of whether money damages or injunctive relief is sought under § 1983. *See Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); *Clay v. Texas Women's University*, 728 F.2d 714, 715-16 (5th Cir. 1984). Accordingly, it is respectfully

14 / 26

recommended that Plaintiff's § 1983 claims against UTMB be dismissed with prejudice as barred by the Eleventh Amendment.

### (2)  Deliberate Indifference to Plaintiff's Health

Plaintiff claims that prison officials at the McConnell Unit have acted with deliberate indifference to his health by failing to remedy the extreme heat conditions in his cell.  As an initial matter, the undersigned notes Plaintiff's testimony at the *Spears* hearing that he only seeks injunctive relief from the individual defendants named in his Original Complaint.  However, in his Supplemental Complaint, Plaintiff offers additional allegations relating to his § 1983 deliberate indifference claims against these defendants as well as a related deliberate indifference claim against the McConnell Unit's Assistant Warden Fernandez.  Plaintiff also seeks punitive damages in his Supplemental Complaint from each individual defendant, including the defendants named in the Original Complaint.  The undersigned, therefore, construes Plaintiff's pleadings as seeking both monetary and injunctive relief for his deliberate indifference claims against Defendants Collier, Sifuentes, Lawson, and Fernandez in their individual and official capacities.

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)).

Prison officials are required to must provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

Extreme cell temperatures in a prison can violate the Eighth Amendment. *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015); *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004). "To be tantamount to the infliction of cruel and unusual punishment, prison conditions must pose an unreasonable risk of serious damage to a prisoner's health—an objective test—and prison officials must have acted with deliberate indifference to the risk posed—a subjective test." *Ball*, 792 F.3d at 592 (internal quotation marks omitted) (affirming holding that Eighth Amendment was violated when prisoners who were being treated for hypertension and diabetes were held in very hot cells without sufficient access to heat-relief measures); *see Webb v. Livingston*, 618 F. App'x 201, 208-09 (5th Cir. 2015) (affirming holding that inmates with heat-sensitive medical conditions who were housed in cells where the temperature exceeded 100 degrees had asserted facts that, if proven, would overcome qualified immunity).

To demonstrate that prison conditions impose an unreasonable risk of serious damage to a prisoner's health, an inmate need not show that a death or serious injury already has occurred but rather that there is a "substantial risk of serious harm." *Ball*,

792 F.3d at 593 (citing *Gates*, 376 F.3d at 333). "Without the requisite proof of both subjective and objective components of an Eighth Amendment violation, however, merely 'uncomfortable' heat in a prisoner's cell does not reflect a 'basic human need that the prison has failed to meet' and is not constitutionally suspect." *Id.* 792 F.3d at 592 (citing *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995)).

Plaintiff alleges the following relevant facts: (1) Plaintiff suffers from a chronic seizure disorder that is well documented by the UTMB; (2) Plaintiff's seizures often occur either in extreme heat conditions or when he bangs his head; (3) Plaintiff suffered a petite mal seizure in hot conditions at the Darrington Unit on July 24, 2018, the day before he was transferred to the McConnell Unit; (4) upon his arrival to the McConnell Unit, Plaintiff was placed in a second-floor cell in the Ad-Seg Unit; (5) the cells in Plaintiff's Ad-Seg section became extremely heated, especially during the early evening hours, due to poor ventilation and the fact that the HVAC system in his Ad-Seg-Unit was either broken or inoperable; (6) while confined in the second-floor Ad-Seg cell, Plaintiff experienced a heat wave around July 20-22, 2018; (7) while not suffering a seizure, Plaintiff testified that he could not sleep during the heatwave and would lie on the floor to evade the suffocating heat; (8) after Plaintiff's heat restrictions were restored on July 18, 2018, he was moved to a lower-level cell in the same Ad-Seg section several days later; (9) while the conditions of his downstairs cell are more tolerable from a heat standpoint with some ventilation, his cell becomes extremely uncomfortable due to the heat during the late afternoon and early evening hours; (10) Plaintiff is only provided heat-mitigation measures in the form of access to cold water; (11) Plaintiff believes that any request for

access to a respite area during extreme heat temperatures would be denied by prison officials; (12) on September 21, 2018, he was moved to a different cell in the Ad-Seg unit; (13) as of September 26, 2018, his in-cell temperature is now comfortable based on "cool tempered air" lightly blowing in his cell; and (14) the HVAC Unit is now fixed and "working very well."  (D.E. 52, p. 2).

Plaintiff's allegations reflect that he suffered a seizure due to extreme heat one day before being transferred to the McConnell Unit and that he is susceptible to having another seizure in extreme heat conditions.  Since his arrival at the McConnell Unit and his initial placement in a second-floor cell in the Ad-Seg unit by Assistant Warden Fernandez, Plaintiff alerted Warden Sifuentes and Senior Practice Manager Lawson about the extreme heat situation in his cell and cell block and the substantial risk of harm the extreme heat could cause him and other heat-sensitive inmates.  Indeed, Plaintiff has testified that: (1) he talked extensively with Warden Sifuentes about the heat issues; and (2) he complained to Manager Lawson about the heat-mitigation measures in place.

Plaintiff alleges no specific facts to suggest that he ever communicated with Assistant Warden Fernandez regarding the excessive heat in his Ad-Seg cells. Furthermore, while indicating that he alerted TDCJ Executive Director Collier about the extreme heat conditions in his cell and cell block, Plaintiff alleges no facts that this defendant had any personal involvement in violating his Eighth Amendment rights.  *See Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."); *Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983

liability for supervisory officials).   Indeed, Plaintiff alleges nothing to suggest that Executive Director Collier had any personal involvement in any decisions to assign Plaintiff to the Ad-Seg section of the McConnell Unit or otherwise house him in extreme heat conditions.

Taken as true, Plaintiff's allegations otherwise fail to indicate that his prison conditions in the Ad-Seg unit posed an unreasonable risk of serious damage to his health or that Warden Sifuentes, Manager Lawson, or any other McConnell Unit official acted with deliberate indifference to that risk to his health.   Plaintiff's allegations reflect that he has suffered no seizures or other serious medical issues in connection with his temporary placement on the second floor of the Ad-Seg unit where the heat conditions were the most extreme.   While complaining about the excessive heat in his second floor cell and cell block, Plaintiff's allegations further reflect that actions were taken to alleviate his distress.   First, Plaintiff's heat restrictions were restored on July 18, 2018, and he was moved several days later to a cooler, lower-level cell in the same Ad-Seg section. Second, Plaintiff acknowledges that he has access to cold water.   Third, Plaintiff was moved again on September  21, 2018, to a cell which Plaintiff describes as comfortable based on "cool tempered air" lightly blowing in his cell due to the fixed and operational HVAC unit.   Overall, Plaintiff's allegations reflect that McConnell Unit officials, including Warden Sifuentes and Manager Lawson, have been responsive to his complaints and health concerns over excessive heat in the Ad-Seg unit.

Accordingly, it is respectfully recommended that Plaintiff's deliberate indifference claims against Defendants Collier, Sifuentes, Lawson, and Fernandez in their individual

and official capacities be dismissed with prejudice for failure to state a claim and/or as frivolous.

### (3)  Deliberate Indifference to Medical Needs

In his Supplemental Complaint, Plaintiff claims that prison officials have acted with deliberate indifference to his chronic seizure condition.  (D.E. 36, p. 17).  In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  Deliberate indifference requires that prison officials both be aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act.  *Farmer*, 511 U.S. at 837.

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).  A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*"  *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (emphasis in original).

"Deliberate indifference is an "extremely high standard to meet."  *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  As long as prison

medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). Furthermore, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

Plaintiff alleges that: (1) on June 24, 2018, Plaintiff suffered a seizure at the Darrington Unit; (2) on June 25, 2018, Plaintiff was transferred to the McConnell Unit; (3) when he arrived at the McConnell Unit, Plaintiff was given his anti-seizure medication but not provided additional medical help for his seizure suffered on June 24, 2018; and (3) on July 18, 2018, PA Corbett re-instated Plaintiff's heat restrictions, increased his dosage of Dilantin, added a new anti-seizure medication called Tegretol, and scheduled Plaintiff for a neurology appointment.  (D.E. 36, pp. 12-14).  Plaintiff alleges no facts to suggest that any of named defendants identified by Plaintiff from the McConnell Unit denied medical care to Plaintiff for his chronic seizure condition. While complaining he was not provided with immediate medical help for his seizure suffered on June 24, 2018, Plaintiff alleges nothing to suggest that any delay in being seen by PA Corbett at the McConnell Unit resulted in substantial harm.

Accordingly, the undersigned respectfully recommends that Plaintiff's claim involving deliberate indifference to his medical needs be dismissed with prejudice for failure to state a claim and/or as frivolous.

### D.    ADA/RA Claims

Plaintiff claims that prison officials at the McConnell Unit failed to provide reasonable accommodations for his disability arising from his chronic seizure condition and intake of medications that cause him to be sensitive to extreme heat.  (D.E. 36. pp. 17-21).  Plaintiff sues TDCJ Director Davis as the official primarily responsible for all rehabilitative programming and the welfare of all TDCJ inmates.  (D.E. 36, p. 2).

The ADA and the RA provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132; *see also* 29 U.S.C. § 794(a).  Courts utilize the same standards in analyzing claims under both the ADA and RA.  *See Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011).  The undersigned, therefore, will analyze Plaintiff's ADA/RA claims as though they were raised as a single claim.  *See Borum v. Swisher County*, No. 2:14-CV-127, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26,2015).

To establish a valid claim under Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability.  *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).   Intentional discrimination is required in order to recover compensatory damages under the ADA and RA.  *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).

Under the ADA and RA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). That is, by failing to accommodate for the disability of the disabled person, the defendant has effectivity discriminated against the person. *Tennessee v. Lane,* 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners. *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA).

While Plaintiff did not separately name the TDCJ as a defendant, it is the appropriate defendant for his ADA/RA claim and will be substituted in place of TDCJ Director Davis. *See McCoy v. Tex. Dep't Crim. Justice*, No. C-05-370, 2006 WL 2331055, at *3 (S.D. Tex. Aug. 9, 2006). *See also Steele v. Thaler*, No. H-09-4076, 2011 WL 739524, at *2 (S.D. Tex. Feb. 22, 2011) (recognizing that plaintiffs cannot sue individual defendants under Title II of the ADA and RA). Accordingly, TDCJ is

substituted in place of TDCJ Director Davis as the appropriate defendant regarding Plaintiff's ADA/RA.

Plaintiff's allegations in this case indicate that he suffers from a well-documented chronic seizure condition affecting his ability to work certain jobs and perform certain daily tasks in extreme heat.  However, his allegations further reflect that McConnell Unit officials have accommodated Plaintiff's condition by restoring his heat restrictions, moving him to cooler cells, and fixing the HVAC unit.  Plaintiff otherwise makes no allegations to suggest that he was excluded from participating or denied meaningful access to services, programs, and activities due to his disability or subjected to any discrimination based on his disability.  Even assuming that Plaintiff is a qualified individual with a disability, his allegations taken as true fail to state an ADA/RA claim.  Accordingly, the undersigned respectfully recommends that Plaintiff's ADA/RA claim be dismissed with prejudice for failure to state a claim and/or as frivolous.

## V.    CONCLUSION

As an initial matter, the **TDCJ** is **SUBSTITUTED** in place of **TDCJ Director Lorie Davis** with respect to Plaintiff's ADA/RA claims.  For the foregoing reasons, the undersigned respectfully recommends that: (1) Plaintiff's request to proceed as a class action be **DENIED**; (2) Plaintiff's § 1983 and ADA/RA claims against **Senior Warden Jeffrey Richardson, Senior Warden Michael Butcher, Captain Norma Smith, Lieutenant D. Wallace, and Correctional Officer Yakeen** be **DISMISSED** without prejudice to Plaintiff filing a civil action against these defendants in the appropriate court; (3) Plaintiff's claims for money damages against all individual Defendants, to the extent

they are sued in their official capacities, be **DISMISSED with prejudice** as barred by the Eleventh Amendment (4) Plaintiff's claims against the UTMB be **DISMISSED with prejudice** as barred by the Eleventh Amendment; (5) Plaintiff's § 1983 claims against **Warden Phillip Sifuentes, Senior Medical Practice Manager Tanya Lawson, TDCJ Executive Director Bryan Collier, and Assistant Warden Daniel P. Fernandez** be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous; and (6) Plaintiff's ADA/RA claims against the **TDCJ** be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous.

It is respectfully recommended further that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

Respectfully submitted this 30th day of October 2018.

Jason B. Libby
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).